**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **SORITA ELZEY** | **CASE NO. 3:26-CV-00793** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JAMES LEBLANC ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Before the Court is a Motion for Judgment on the Pleadings [Doc. No. 70] filed by Defendants James LeBlanc ("LeBlanc") and Seth Smith ("Smith") (collectively, "Defendants"). An Opposition [Doc. No. 71] was filed by Plaintiffs Kanika Grant ("Grant") and Sorita Elzey ("Elzey") (collectively, "Plaintiffs"). A Reply [Doc. No. 77] was filed by Defendants.

For the reasons set forth herein, Defendants Motion for Judgment on the Pleadings is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

This case arises from the fatal injuries Sedrick Elzey ("Sedrick") sustained while incarcerated at Madison Parish Correctional Center ("MPCC"). MPCC is a sheriff-owned local correctional facility rather than a facility owned or operated by the Louisiana Department of Public Safety and Corrections ("DPSC").[1] Sedrick was a

[1] [Id. at ¶ 1].

convicted prisoner and serving a DPSC sentence and was transferred to MPCC on June 7, 2023.[2]

DPSC uses local correctional facilities such as MPCC to house state-sentenced prisoners.[3] Those facilities must comply with DPSC's Basic Jail Guidelines ("Guidelines"), which establish standards concerning, among other things, inmate classification, staffing, prisoner management, and reporting.[4] When making housing assignments, the Guidelines require consideration of an inmate's legal status, custody needs, special problems and needs, and behavior.[5] Until sometime in 2022, local facilities also submitted reports to DPSC concerning incidents including altercations, deaths, and injuries requiring hospitalization.[6]

Pertinent to the timeframe involved in this case, LeBlanc was Secretary of DPSC, and Smith was DPSC's Chief of Operations.[7] LeBlanc was responsible for oversight, review, revision, and promulgation of the Guidelines.[8] Smith's responsibilities included oversight of local-facility operations and audits for compliance with the Guidelines, and Smith reported directly to LeBlanc.[9]

According to the First Amended Complaint, MPCC did not maintain an adequate classification system and instead assigned prisoners to housing based on available beds without adequately considering custodial status, disciplinary history,

---

[2] [Doc. No. 4, ¶¶ 64–65].
[3] [Id. at ¶ 19].
[4] [Id. at ¶¶ 19, 24–26, 32].
[5] [Id. at ¶ 24].
[6] [Id. at ¶¶ 32–33].
[7] [Id. at ¶¶ 15–16].
[8] [Id. at ¶ 15].
[9] [Id. at ¶¶ 16, 55].

known enemies, or other classification factors.[10] Plaintiffs also allege MPCC lacked sufficient qualified staff to supervise its prisoner population.[11] Before Sedrick's arrival, MPCC's reports reflected recurring violence at the facility, including 234 reported assaults or fights during 2022 and numerous serious injuries in preceding years.[12] Plaintiffs allege Defendants received information concerning this violence through DPSC's reporting and auditing processes but did not require corrective action or discontinue housing DPSC prisoners at MPCC.[13]

When Sedrick arrived at MPCC on June 7, 2023, MPCC personnel were responsible for assessing his safety risks and assigning him to appropriate housing.[14] Plaintiffs allege MPCC failed to perform an adequate assessment and placed Sedrick in a dorm with both pretrial detainees and sentenced prisoners.[15] That same day, five other prisoners attacked Sedrick, causing severe injuries.[16] DPSC later granted Sedrick compassionate release.[17] Sedrick died from his injuries on March 29, 2025.[18]

Elzey, as representative of Sedrick's succession, originally brought this action on Sedrick's behalf. After Sedrick's death, Elzey and Grant, as natural tutrix of Sedrick's minor child, were substituted as Plaintiffs.[19] Plaintiffs assert claims under 42 U.S.C. § 1983 against Defendants in their individual capacities for alleged

[10] [Id. at ¶¶ 27–31].
[11] [Id. at ¶ 30].
[12] [Id. at ¶¶ 36–40].
[13] [Id. at ¶¶ 40–49, 54, 60–61].
[14] [Id. at ¶ 65].
[15] [Id. at ¶¶ 65–72].
[16] [Id.].
[17] [Id. at ¶ 75].
[18] [Doc. No. 43].
[19] [Doc. No. 46].

violations of Sedrick's Eighth and Fourteenth Amendment rights.[20] Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), principally asserting qualified immunity.[21]

The issues have been briefed, and the Court is prepared to rule.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. FED. R. CIV. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Thus, the court accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and asks whether the complaint states a facially plausible claim for relief. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

The court generally considers the pleadings, documents incorporated by reference, and matters subject to judicial notice. *Benfer v. City of Baytown, Texas*, 120 F.4th at 1272, 1278, n. 2. (5th Cir. 2024). These standards also apply when dismissal is sought on qualified-immunity grounds. *Id.* at 1279.

Qualified immunity shields government officials from civil liability unless their conduct violates a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense, a plaintiff must show that the official violated a constitutional right and that the right was clearly

[20] [Doc. No. 4, ¶¶ 79–91].
[21] [Doc. No. 70].

established when the official acted. *Id.* The court may address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The plaintiff bears the burden of overcoming the defense. *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019).

## III. ANALYSIS

Plaintiffs assert parallel claims under the Fourteenth and Eighth Amendments.[22] Because Sedrick was a convicted prisoner, the Fourteenth Amendment claim fails.[23] The Eighth Amendment claim survives because the First Amended Complaint plausibly alleges that Defendants knew of, but disregarded, a substantial risk of serious harm at MPCC.

### A. Fourteenth Amendment Claim

Section 1983 provides a remedy for violations of federal rights; it does not itself create substantive rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). The Court must therefore identify the specific constitutional provision governing the alleged misconduct. *Id.* at 394.

Sedrick was serving a DPSC sentence when he arrived at MPCC.[24] The Eighth Amendment governs a convicted prisoner's claim that officials failed to protect him from inmate violence. *Farmer v. Brennan*, 511 U.S. 825, 832–34 (1994). The Fourteenth Amendment instead protects pretrial detainees who have not been convicted. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).

---

[22] [Doc. No. 4, ¶¶ 79–91].
[23] [Id. at ¶¶ 64–65].
[24] [Id.].

Plaintiffs' Fourteenth Amendment claim rests on the same alleged failure to protect Sedrick that supports their Eighth Amendment claim.[25] When a specific constitutional provision governs the challenged conduct, the court analyzes the claim under that provision rather than substantive due process. *Calhoun v. Hargrove*, 312 F.3d 730, 735 (5th Cir. 2002) (citing *Graham*, 490 U.S. at 395). Accordingly, Plaintiffs fail to state a Fourteenth Amendment claim against Defendants, so this claim is dismissed.

**B. Eighth Amendment Claim**

The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence by other prisoners. *Farmer*, 511 U.S. at 832–33. A failure-to-protect claim has an objective and a subjective component. *Id.* at 834, 837. The prisoner must face an objectively substantial risk of serious harm, and the defendant must act with deliberate indifference to that risk. *Id.* Subjective recklessness as used in the criminal law is the test for deliberate indifference under the Eighth Amendment. *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc).

Section 1983 does not impose vicarious liability on supervisors for their subordinates' conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A supervisor may be individually liable only for his own actions or omissions that cause the constitutional violation. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

[25] [Id. at ¶¶ 79–91].

An injury caused by another prisoner does not, by itself, establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. But pervasive inmate violence may establish an unconstitutional risk of harm. *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir. 1986). The absence of an adequate classification system may also contribute to unconstitutional conditions when dangerous prisoners are not separated from others. *Pembroke v. Wood County*, 981 F.2d 225, 229 (5th Cir. 1993).

Plaintiffs allege that MPCC lacked an adequate classification system and assigned prisoners to housing based on bed availability.[26] Plaintiffs further allege that MPCC disregarded legal status, custody needs, disciplinary history, known enemies, and other relevant classification factors.[27] They also allege that inadequate staffing left prisoner housing areas without sufficient supervision.[28]

The First Amended Complaint connects those conditions to an alleged pattern of serious violence. Plaintiffs allege that MPCC reported 234 assaults or fights in 2022 and averaged approximately one assault every other day during earlier reporting periods.[29] They also allege repeated hospital transports, serious injuries, two homicides, and ten unexplained deaths.[30] Plaintiffs allege that these conditions existed for several years before five prisoners attacked Elzey on the day he arrived at MPCC.[31]

[26] [Id. at ¶¶ 27–31].
[27] [Id.].
[28] [Id.].
[29] [Id. at ¶¶ 35–40].
[30] [Id.].
[31] [Id.].

The government violating its own regulations, like the Basic Jail Guidelines, does not independently establish a constitutional violation. *Davis v. Scherer*, 468 U.S. 183, 194–95 n.12 (1984). But the Guidelines and MPCC's alleged noncompliance may bear on whether the conditions created a substantial risk of serious harm. *Farmer*, 511 U.S. at 842–43. Taken together, the alleged absence of meaningful classification, inadequate supervision, and persistent serious violence plausibly establishes such a risk. *Id.* at 834.

An official acts with deliberate indifference only if he knows facts indicating a substantial risk of serious harm, draws that inference, and disregards the risk. *Id.* at 837. An official's failure to recognize a risk that he should have perceived does not satisfy this standard. *Id.* at 838. And an official who responds reasonably to a known risk cannot be held liable, even if the response fails to prevent the harm. *Id.* at 844.

Actual knowledge may be established through circumstantial evidence. *Id.* at 842. A factfinder may infer knowledge when a risk is obvious, and an official cannot escape liability by refusing to verify facts that he strongly suspects to be true. *Id.* at 842–43. But supervisory status and conclusory allegations that an official "must have known" do not establish personal liability. *Iqbal*, 556 U.S. at 676, 678.

The First Amended Complaint contains allegations specific to both Defendants. LeBlanc allegedly oversaw DPSC, promulgated the Guidelines, supervised Smith, and established DPSC's continuing use of local facilities.[32] Smith allegedly oversaw local-facility operations, incident management, offender

[32] [Id. at ¶ 15].

assignments, and audits for compliance with the Guidelines.[33] Plaintiffs also allege that Smith regularly reported to LeBlanc about the operations under Smith's supervision.[34]

Plaintiffs allege that MPCC submitted reports identifying altercations, deaths, serious injuries, and hospital transports.[35] They further allege that Defendants received information showing hundreds of assaults, recurring serious injuries, homicides, and continued violence over several years.[36] Moreover, Plaintiffs claim that DPSC's audits depended on records selected or generated by MPCC and did not meaningfully examine whether MPCC implemented the classification and staffing requirements.[37]

Plaintiffs do not rely solely on Defendants' titles or on isolated acts of inmate violence. Rather, they allege that each Defendant received recurring information showing serious violence while overseeing the requirements intended to address classification and supervision. Those factual allegations permit an inference of actual knowledge at the pleading stage. *Farmer*, 511 U.S. at 842.

Defendants respond that DPSC promulgated adequate Guidelines and that MPCC, not DPSC, failed to follow them.[38] That argument may ultimately prevail if the evidence shows that the reports conveyed only generalized information, that the audits indicated compliance, or that Defendants took reasonable corrective measures.

---

[33] [Id. at ¶ 16].
[34] [Id.].
[35] [Id. at ¶¶ 32–40].
[36] [Id. at ¶¶ 35–41].
[37] [Id. at ¶¶ 44–49, 60–63].
[38] [Doc. No. 70-1, pp. 17–22].

*Farmer*, 511 U.S. at 844. But the First Amended Complaint alleges that Defendants knew the Guidelines were not functioning at MPCC and took no meaningful action despite persistent serious violence.[39] The Court must accept those well-pleaded allegations at this stage.

Plaintiffs ultimately must prove more than violence at MPCC, departures from the Guidelines, or deficient oversight. *Id.* at 837–38. They must prove that each Defendant actually recognized a substantial risk and disregarded it by failing to take reasonable measures. *Id.* at 837, 844. Negligent auditing, poor administration, or a failure to perceive the danger will not satisfy that burden. *Id.* at 838.

Plaintiffs alternatively argue that constructive knowledge suffices under their supervisory-policy theory.[40] The Court need not decide whether that theory alters the governing standard because the pleaded facts permit an inference of actual knowledge. *Id.* at 842–43. Whether the reports, audits, communications, and responses prove that knowledge must await an evidentiary record.

A supervisor cannot be liable under § 1983 merely because he employed or supervised a constitutional wrongdoer. *Iqbal*, 556 U.S. at 676. Plaintiffs must plausibly allege that each Defendants own conduct caused the constitutional violation. *Porter*, 659 F.3d at 446.

Defendants argue that the Madison Parish Sheriff controlled MPCC's daily operations and that MPCC personnel made Sedrick's housing assignment.[41] The First

---

[39] [Doc. No. 4, ¶¶ 60–63].
[40] [Doc. No. 71, pp. 16–18].
[41] [Doc. No. 70-1, pp. 17–20].

Amended Complaint likewise identifies an MPCC official as responsible for assessing Sedrick's safety risks and assigning his housing.[42] Those allegations foreclose liability based merely on Defendants' supervisory positions. *Iqbal*, 556 U.S. at 676.

But they do not establish that Defendants lacked all relevant authority over MPCC. In *Crittindon v. LeBlanc*, the Fifth Circuit held that DPSC has responsibility for local jails once they house DPSC prisoners. 37 F.4th 177, 191 (5th Cir. 2022). DPSC audits local facilities, assists noncompliant facilities, and may remove DPSC prisoners when a facility does not comply with the Guidelines. *Id.* at 182, 191.

The Fifth Circuit recently applied *Crittindon* to these Defendants and this facility. *Murray v. LeBlanc*, No. 25-30076, 2026 WL 1961125, at *5–6 (5th Cir. July 7, 2026) (per curiam). The Court held that LeBlanc and Smith have "at least some authority" over facilities like MPCC when they house DPSC prisoners. *Id.* at *6. That authority includes helping MPCC regain compliance with the Guidelines or removing DPSC prisoners from the facility. *Id.* at *5–6.

*Murray* does not establish that Defendants were deliberately indifferent here. The Fifth Circuit rejected only their argument that they lacked relevant authority and expressly declined to decide whether they ultimately enjoy qualified immunity. *Id.* Thus, the Sheriff's control over MPCC's daily operations does not categorically defeat Plaintiffs' claim, but neither does DPSC's limited authority establish liability. *Id.*

[42] [Doc. No. 4, ¶¶ 65–66].

Plaintiffs allege that Defendants knew MPCC's classification and staffing practices created a persistent danger but failed to demand corrective action or remove DPSC prisoners.[43] They further allege that MPCC placed Sedrick in the general population without adequate classification and that five prisoners attacked him that day.[44] Accepting those allegations as true, Plaintiffs plausibly allege a causal connection between Defendants' failure to exercise their authority and the conditions that exposed Sedrick to harm. *Porter*, 659 F.3d at 446.

**C. Qualified Immunity**

The first qualified-immunity question is whether Plaintiffs plausibly allege the violation of a constitutional right. *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025). For the reasons above, the First Amended Complaint plausibly alleges that Defendants knew MPCC presented a substantial risk of serious harm and disregarded that risk. *Farmer*, 511 U.S. at 837, 842–44. Plaintiffs therefore satisfy the first prong at the pleading stage.

A right is clearly established only when existing law places the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Court must define the right according to the particular circumstances rather than at a high level of generality. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). Existing authority need not involve identical facts, but it must give officials fair warning that their conduct is unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

---

[43] [Id. at ¶¶ 60–63].
[44] [Id. at ¶¶ 64–72].

The right at issue is not a freestanding right to compliance with every provision of the internal government Guidelines. *Davis*, 468 U.S. at 194–95 n.12. Nor is it an abstract right to be free from all inmate violence. *Farmer*, 511 U.S. at 834. The pleaded right is a convicted prisoner's right not to remain exposed to a substantial risk of serious inmate violence when officials know of that risk, possess authority to mitigate it, and decline to take reasonable measures. *Id.* at 837, 844.

That right was clearly established before Sedrick's June 2023 attack. *Farmer* held that an official violates the Eighth Amendment by knowingly disregarding a substantial risk of serious inmate harm. *Id.* at 847. The Fifth Circuit has likewise recognized that an official violates clearly established law by disregarding a known and substantial risk of inmate violence. *Longoria v. Texas*, 473 F.3d 586, 592–93 (5th Cir. 2006). Fifth Circuit precedent also recognized that pervasive violence, inadequate supervision, and the absence of meaningful classification could create unconstitutional conditions. *Alberti*, 790 F.2d at 1224. And by 2022, *Crittindon* had established that DPSC officials possess authority to audit local facilities, seek compliance, and remove DPSC prisoners from noncompliant facilities. 37 F.4th at 182, 191.

Defendants frame the issue more narrowly. They argue that no precedent prohibited DPSC officials from promulgating facially valid Guidelines, reviewing compliance materials, and leaving daily management to a parish sheriff.[45] But the First Amended Complaint alleges more than reasonable reliance on the policies. It

[45] [Doc. No. 70-1, pp. 20–22].

alleges that Defendants received years of information showing extreme violence and systemic noncompliance but declined to take measures within their authority.[46]

*Murray* postdates Sedrick's attack and therefore could not itself clearly establish the law in June 2023. See *Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) (per curiam). But *Murray* confirms that *Crittindon* had already rejected Defendants' claim that DPSC lacked relevant authority over parish facilities housing DPSC prisoners. 2026 WL 1961125, at *5–6. *Murray* is therefore relevant to the scope of preexisting *Crittindon* authority, not as a new source of clearly established law. Accepting the pleaded facts as true, *Farmer*, *Longoria*, and *Crittindon* gave Defendants fair warning that they could not knowingly disregard an extreme and persistent risk of inmate violence when they possessed authority to pursue corrective measures. *Farmer*, 511 U.S. at 837, 844; *Longoria*, 473 F.3d at 592–93; *Crittindon*, 37 F.4th at 191.

Qualified immunity therefore does not warrant judgment on the pleadings as to the Eighth Amendment claim. This ruling does not decide whether Plaintiffs can prove deliberate indifference or ultimately overcome qualified immunity. Defendants

[46] [Doc. No. 4, ¶¶ 60–63].

may reassert qualified immunity on a developed evidentiary record. *See Behrens v. Pelletier*, 516 U.S. 299, 306–07 (1996).

## IV. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Judgment on the Pleadings [Doc. No. 70] filed by Defendants James LeBlanc and Seth Smith is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion for Judgment on the Pleadings is **GRANTED** as to Plaintiffs' Fourteenth Amendment claims and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion for Judgment on the Pleadings [Doc. No. 70] is **DENIED** as to Plaintiffs' Eight Amendment claims.

MONROE, LOUISIANA, this 24th day of September 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE